IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES CHATMAN,

    Plaintiff,                      No. CIV S-09-1028 JAM CKD P

    vs.

TOM FELKER, et al.,                ORDER AND

    Defendants.                 FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendants Probst, Craddock, Uribe, Smith, Williams, Griffith, Felker, McDonald, Perez, Peddicord, Keating, Harrod, Harper and Shaver (defendants), all current or former employees of the California Department of Corrections and Rehabilitation (CDCR), have filed a motion to dismiss.

I. "Count Eleven"

        First, defendants assert plaintiff's claim for "intentional and negligent infliction of emotional distress," which is identified as "Count Eleven" in plaintiff's complaint, is barred because plaintiff did not comply with the requirements of the California Tort Claims Act by presenting this claim to the California Victim Compensation and Government Claims Board. Plaintiff must allege compliance with California's Tort Claims Act in his complaint to proceed

1

on tort claims arising under California law. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2; Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995). Plaintiff has not alleged compliance in his complaint nor does he assert that he complied in his opposition to defendants' motion to dismiss. Therefore the court will recommend that "Count Eleven" be dismissed.

II. Failure To Exhaust Administrative Remedies

Defendants also argue that some of plaintiff's claims should be dismissed for failure to exhaust administrative remedies. A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). California Department of Corrections (CDC) regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation generally will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

/////

Administrative remedies must be "properly" exhausted which means use of all steps put forward by the agency. Woodford v. Ngo, 548 U.S. 81, 90 (2006). Also, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt, 315 F.3d at 1119.[1]

A. "Count Two"

In "Count 2" of his complaint, plaintiff alleges defendant Uribe violated plaintiff's rights arising under both the First and Eighth Amendments.[2] Plaintiff asserts that on or about March 8, 2007, he could not move from his bed and experienced excruciating pain in his left foot and shoulder. Complt., ¶ 33. Defendant Uribe, a correctional officer, was summoned to assist plaintiff. Id., ¶¶ 8 & 34. After being apprised of plaintiff's condition, defendant Uribe failed to offer any assistance. Id., ¶¶ 35-36. Plaintiff spent that evening in pain. Id., ¶ 38. The next day plaintiff was still in pain and was diagnosed with having gout. Id., ¶ 38. Plaintiff asserts Uribe failed to assist plaintiff in retaliation for plaintiff having filed "complaints" against Uribe. Id., ¶ 41.

Defendants assert plaintiff did not file a grievance regarding his allegations against defendant Uribe. However, plaintiff points to evidence indicating he did grieve Uribe's failure to provide him with medical care on March 8, 2007. Opp'n, Ex. F. Apparently, the grievance was screened out because the person reviewing the grievance determined that it was received on April 13, 2007, which was after the fifteen-day deadline for filing grievances. Id.,

---

[1] On December 2, 2009, plaintiff was informed of the requirements for opposing an motion to dismiss for failure to exhaust administrative remedies.

[2] "In Count 2" plaintiff makes the same allegations against defendant Patton. Defendant Patton has not yet appeared in this action.

Ex. F at 7. On the grievance form, plaintiff indicated that he submitted his grievance on March 15, 2007. Id., Ex. F at 8. Also, in his declaration attached to his opposition, plaintiff reaffirms he filed his grievance on March 15, 2007. Pl.'s Decl., ¶ 7.[3]

Defendants dispute that plaintiff submitted his grievance on March 15, 2007, but fail to point to anything upon which this court could reasonably base a finding that plaintiff did not submit the grievance when he says he did. Defendants ask that the court hold an evidentiary hearing to address when the grievance was submitted. Defendants indicate if the court were to grant an evidentiary hearing defendants would present evidence rebutting plaintiff's assertion that he filed a timely grievance including evidence indicating the following: "(1) when officers receive grievances, they promptly place them into an appeals box; (2) each work day, the appeals boxes are delivered to an appeals coordinator and (3) the appeals coordinator always date stamps the grievance on the date it was received." Reply at 4-5. But, defendants fail to indicate why such evidence was not presented with their reply brief or otherwise indicate why an evidentiary hearing is necessary to determine when plaintiff filed his grievance.

For these reasons, the court will recommend that defendants' motion to dismiss be denied with respect to plaintiff's Eighth Amendment claim against defendant Uribe. However, the court will recommend that plaintiff's First Amendment claim be dismissed because there is nothing before the court indicating plaintiff complained through the grievance process that defendant Uribe's actions on March 8, 2007 were in retaliation for plaintiff's exercise of his First Amendment rights.

B. "Count Four"

In "Count Four" plaintiff alleges, among other things, that on or about June 7, 2007, defendants Craddock and Probst confiscated some of plaintiff's personal property, including court documents, medication, and stamps. Plaintiff asserts this was done in retaliation

---

[3] Plaintiff's declaration appears near the front of his opposition to defendants' motion to dismiss.

for plaintiff filing lawsuits and other complaints against correctional staff in violation of plaintiff's First Amendment rights.[4]  Compl., ¶ ¶ 52-68 & 160-169.

        Defendants concede that plaintiff submitted a grievance regarding the actions of Craddock and Probst described above and they include a copy of the grievance in "Exhibit L" attached to their motion.  Defendants assert plaintiff did not properly exhaust the grievance procedure, however, because he refused to participate in an interview conducted pursuant to review at the first level as he was required to do under Cal Code. Regs. tit 15, § 3084.4(d) (2007).  Defendant Harrod conducted the interview with plaintiff.  In his affidavit, identified by defendants as "Exhibit Z," defendant Harrod asserts:

> On approximately August 12, 2007, I was assigned to interview [plaintiff] regarding grievance HDSP-07-2687.  In the grievance, [plaintiff] claims that officers [Probst] and Craddock stole his property.  During the interview, I attempted to explain departmental policy and procedures pertaining to lockdown cell searches to [plaintiff.]  Plaintiff responded by changing the subject and attempting to discuss issues concerning other grievance[s] he filed.  Next, [plaintiff] became argumentative and uncooperative.  I explained to [plaintiff] that:  (1) I need only [plaintiff's] evidence that [Probst] and Craddock stole his property; and (2) the interview would be cancelled if he chose not to cooperate.  Despite my warning, [plaintiff] refused to participate with the interview.  He continued to be unresponsive, loud and argumentative.  Accordingly, I terminated the interview due to [plaintiff's] lack of cooperation. . .
>
> I was not attempting to interfere with [plaintiff's] ability to access the Court or prevent [plaintiff] from suing [Probst], Craddock or anyone else.  I terminated the interview solely because [plaintiff] refused to participate in the interview.

        Plaintiff responds in his own declaration that Harrod's assertion that plaintiff did not participate in the interview is "fabricated," and also retaliatory. Pl.'s Decl., ¶¶ 3-5. While plaintiff's response to defendants' motion concerning "Count Four" is piecemeal, vague and

---

[4] In "Count Four" plaintiff also claims Craddock and Probst violated plaintiff's Eighth Amendment rights.  This claim was screened out on September 17, 2009.  Further, plaintiff claims defendant Probst took other retaliatory action against plaintiff on July 5, 2007.  Compl., ¶¶ 62-66.  Defendants do not argue this aspect of "Count Four" should be dismissed.

generally confusing, the most concise and understandable recitation of plaintiff's position appears in a grievance plaintiff submitted with respect to the actions of defendant Harrod:

> On August 12, 2007, Sergeant Harrod summoned [plaintiff] to the C4 housing unit office, whereby he informed [plaintiff] that he had a meeting with Appeal Coordinators Chapman and Dangler, Associate Warden Wright, Litigation Coordinator Spuk and Sergeant Lockard about [plaintiff's] circumvention of the appeal process by writing to the office of internal affairs. He further stated that general census [sic] among them and him served the best interest to dismiss this appeal to avoid setting a precedent of circumventing the administration's authority. When [plaintiff] indicated to the aforesaid sergeant that the appeal was already heard by Sgt. Lockard with himself and other officials present, he responded by saying [plaintiff] imagined the whole event then began laughing, which prompted C/O Phang and C/O Hanks to laugh. When [plaintiff] asked the aforesaid Sergeant what was so funny, he replied that he found it strange for [plaintiff] to have filed an appeal without his signature or date. [Plaintiff] responded by saying he did not file the attached appeal to the letter addressed to the Office of Internal Affairs, that someone in the administration must have done it. Sergeant Harrod laughed again, then stated someone in the administration must have changed their mind, which prompted more laughter. [Plaintiff] was dismissed from the interview as the aforesaid sergeant continued laughing without cessation.
>
> Sergeant Harrod never asked [plaintiff] about a cell search receipt or explained any departmental policy and procedures pertaining to lockdown cell searches, as he falsely alleged in his first level response. As well, [plaintiff] never became loud, argumentative, uncooperative or made statements about any lawsuit. As such, Sergeant Harrod fabricated his first level response to justify dismissing the appeal to satisfy his superiors, as uttered[5] by him through the mention of their names.

Opp'n, Ex. C at 7-8.

As indicated above, it is defendants' burden to demonstrate failure to exhaust administrative remedies. Defendants have not met their burden because the court cannot find on the record before the court that Harrod's version of what occurred at the August 12, 2007 interview is any more believable than plaintiff's. Defendants request that the court hold an

---

[5] It is not entirely clear whether plaintiff uses the word "uttered" here as his handwriting is difficult to read.

6

evidentiary hearing as to this issue. However, defendants fail to point to anything indicating an evidentiary hearing is necessary. While defendants identify certain witnesses they would like to call at an evidentiary hearing, Mot. at 2, they fail to indicate why affidavits from those witnesses were not presented with the briefs concerning their motion to dismiss. Further, defendants fail to point to anything suggesting that evidence which could only be produced via an evidentiary hearing at this point would add anything material to the record already before the court.

Accordingly, defendants' request that the court hold an evidentiary hearing will be denied and the court will recommend that defendants' motion to dismiss be denied with respect to "Count 4."

C. "Count Nine"

In "Count 9," plaintiff alleges defendant Harper violated plaintiff's First Amendment rights by retaliating against him for going on a hunger strike.[6] Plaintiff asserts the retaliatory acts consisted of defendant Harper confiscating court documents, stationary, mail, cosmetics, books, an appliance and prescribed medication. This occurred on or about January 11, 2008. Compl., ¶¶ 116-119.

Plaintiff submitted a grievance with respect to his allegations against Sergeant Harper on January 17, 2008. Opp'n, Ex. D at 3. The grievance was returned to plaintiff because he did not first attempt to resolve the issues at the "informal level" by presenting his concerns directly to Harper. Id., Ex. D at 2. Plaintiff was instructed to do so before proceeding further with the grievance process. Id. Nothing suggests he did.

Plaintiff asserts, under California law, he was permitted to bypass the "informal Level" with respect to his complaint against Harper. Opp'n, P. & A. at 13.[7] Under the 2008

---

[6] In "Count Nine" plaintiff also claims defendant Harper violated plaintiff's Eighth Amendment rights. This claim was screened out on September 17, 2009.

[7] On page 13 of his "Points and Authorities," plaintiff mistakenly refers to defendant Harper as defendant Harrod.

7

1  version of Title 15, § 3084.5 of the California Code of Regulations, the informal level of the
2  prisoner grievance procedure maybe bypassed with respect to allegations of "misconduct by a
3  departmental peace officer." Cal Code. Regs. tit 15, § 3084.5(a)(3)(G) (2007). The court
4  assumes by virtue of his title as "Sergeant Harper," he is such an officer. Further, defendants fail
5  to point to anything suggesting he is not a "departmental peace officer" and do not respond in
6  anyway to plaintiff's assertion that Harper's status as a departmental peace officer permitted
7  plaintiff to bypass the informal level.

8  It appears that plaintiff did comply with the administrative procedure applicable to
9  his grievance, but was shut out of the process due to the mistake of the person reviewing the
10 grievance at the first level. At minimum, defendants have not met their burden of establishing
11 that plaintiff did not do all that he needed to do to exhaust administrative remedies. Therefore,
12 defendants' motion to dismiss plaintiff's remaining claim against defendant Harper should be
13 denied.

   D. "Count Ten"

15 In "Count Ten," plaintiff alleges that defendants Shaver, Griffith and Peddicord
16 had him placed in segregated housing, or ordered him retained in segregated housing, beginning
17 on or about June 5, 2008 in retaliation for lawsuits filed by plaintiff challenging prison
18 conditions. Compl. ¶¶ 124-137 & 205-213. Plaintiff asserts this amounts to a violation of his
19 First Amendment Rights.[8] Defendants assert plaintiff never filed a grievance concerning the
20 allegations in "Count Ten."

21 In his opposition, plaintiff points to documents identified as Exhibit F in support
22 of his assertion that he at least attempted to exhaust administrative remedies with respect to his
23 First Amendment claims against Shaver, Griffith and Peddicord. Opp'n, P. & A. at 15. The
24 court has reviewed those documents and while plaintiff appears to challenge the decision to place

---

[8] In "Count Ten" plaintiff also claims defendants Shaver, Griffith and Peddicord violated plaintiff's Fourteenth rights. This claim was screened out on September 17, 2009.

8

him in segregated housing, there is no mention of the placement in segregated housing being retaliatory for exercise of any protected right. Therefore, plaintiff has not properly exhausted administrative remedies with respect to his First Amendment claims against defendants Shaver, Griffith or Peddicord.

In accordance with the above, IT IS HEREBY ORDERED that defendants' request that the court hold an evidentiary hearing is denied.

IT IS HEREBY RECOMMENDED that

1. Defendants' April 22, 2010 motion to dismiss be granted in part and denied in part as follows:

    A. Granted with respect to:

        i. Plaintiff's "Count Eleven" in his complaint.

        ii. Plaintiff's First Amendment claims against defendant Uribe;

        iii. Plaintiff's First Amendment claims against defendants Shaver, Griffith and Peddicord resulting in their being dismissed from this action; and

    B. Denied with respect to:

        i. Plaintiff's Eighth Amendment claim against defendant Uribe;

        ii. Plaintiff's First Amendment claims against defendants Craddock and Probst concerning events occurring June 7, 2007; and

        iii. Plaintiff's First Amendment claim against defendant Harper.

2. The remaining defendants be ordered to file their answer within twenty days of resolution of defendants' motion to dismiss.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within fourteen days after service of the objections.  The parties are
3  advised that failure to file objections within the specified time may waive the right to appeal the
4  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 12, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

[1] chat1028.57