IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES CHATMAN,

      Plaintiff,                    No. CIV S-09-1028 JAM CKD P

   vs.

TOM FELKER, et al.,

      Defendants.            <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Several defendants filed a motion to dismiss on April 22, 2010. Those defendants argued that some of plaintiff's claims should be dismissed for failure to exhaust available administrative remedies. One of the claims, which appears in "Count Four" of plaintiff's complaint, concerns the fact that on or about June 7, 2007, defendants Craddock and Probst confiscated some of plaintiff's personal property, including court documents, medication, and stamps. Plaintiff asserts this was done in retaliation for plaintiff filing lawsuits and other complaints against correctional staff in violation of plaintiff's First Amendment rights. On September 12, 2011, the court found as follows with respect to defendants' motion to dismiss this claim:

/////

1    Defendants concede that plaintiff submitted a grievance regarding
     the actions of Craddock and Probst described above and they
2    include a copy of the grievance in "Exhibit L" attached to their
     motion.  Defendants assert plaintiff did not properly exhaust the
3    grievance procedure, however, because he refused to participate in
     an interview conducted pursuant to review at the first level as he
4    was required to do under Cal Code. Regs. tit 15, § 3084.4(d)
     (2007).  Defendant Harrod conducted the interview with plaintiff.
5    In his affidavit, identified by defendants as "Exhibit Z," defendant
     Harrod asserts:

6
          On approximately August 12, 2007, I was assigned
7         to interview [plaintiff] regarding grievance HDSP-
          07-2687.  In the grievance, [plaintiff] claims that
8         officers [Probst] and Craddock stole his property.
          During the interview, I attempted to explain
9         departmental policy and procedures pertaining to
          lockdown cell searches to [plaintiff.]  Plaintiff
10        responded by changing the subject and attempting to
          discuss issues concerning other grievance[s] he
11        filed.  Next, [plaintiff] became argumentative and
          uncooperative.  I explained to [plaintiff] that:  (1) I
12        need only [plaintiff's] evidence that [Probst] and
          Craddock stole his property; and (2) the interview
13        would be cancelled if he chose not to cooperate.
          Despite my warning, [plaintiff] refused to
14        participate with the interview.  He continued to be
          unresponsive, loud and argumentative.
15        Accordingly, I terminated the interview due to
          [plaintiff's] lack of cooperation. . .
16
          I was not attempting to interfere with [plaintiff's]
17        ability to access the Court or prevent [plaintiff]
          from suing [Probst], Craddock or anyone else.  I
18        terminated the interview solely because [plaintiff]
          refused to participate in the interview.
19
     Plaintiff responds in his own declaration that Harrod's decision
20   that plaintiff did not participate in the interview is "fabricated," and
     also retaliatory.  Pl.'s Decl., ¶¶ 3-5.  While plaintiff's response to
21   defendants' motion concerning "Count Four" is piecemeal, vague
     and generally confusing, the most concise and understandable
22   recitation of plaintiff's position appears in a grievance plaintiff
     submitted with respect to the actions of defendant Harrod:
23
          On August 12, 2007, Sergeant Harrod summoned
24        [plaintiff] to the C4 housing unit office, whereby he
          informed [plaintiff] that he had a meeting with
25        Appeal Coordinators Chapman and Dangler,
          Associate Warden Wright, Litigation Coordinator
26        Spuk and Sergeant Lockard about [plaintiff's]

2

circumvention of the appeal process by writing to the office of internal affairs. He further stated that general census [sic] among them and him served the best interest to dismiss this appeal to avoid setting a precedent of circumventing the administration's authority. When [plaintiff] indicated to the aforesaid sergeant that the appeal was already heard by Sgt. Lockard with himself and other officials present, he responded by saying [plaintiff] imagined the whole event then began laughing, which prompted C/O Phang and C/O Hanks to laugh. When [plaintiff] asked the aforesaid Sergeant what was so funny, he replied that he found it strange for [plaintiff] to have filed an appeal without his signature or date. [Plaintiff] responded by saying he did not file the attached appeal to the letter addressed to the Office of Internal Affairs, that someone in the administration must have done it. Sergeant Harrod laughed again, then stated someone in the administration must have changed their mind, which prompted more laughter. [Plaintiff] was dismissed from the interview as the aforesaid sergeant continued laughing without cessation.

Sergeant Harrod never asked [plaintiff] about a cell search receipt or explained any departmental policy and procedures pertaining to lockdown cell searches, as he falsely alleged in his first level response. As well, [plaintiff] never became loud, argumentative, uncooperative or made statements about any lawsuit. As such, Sergeant Harrod fabricated his first level response to justify dismissing the appeal to satisfy his superiors, as uttered[1] by him through the mention of their names.

Opp'n, Ex. C at 7-8.

As indicated above, it is defendants' burden to demonstrate failure to exhaust administrative remedies. Defendants have not met their burden because the court cannot find on the record before the court that Harrod's version of what occurred at the August 12, 2007 interview is any more believable than plaintiff's. Defendants request that the court hold an evidentiary hearing as to this issue. However, defendants fail to point to anything indicating an evidentiary hearing is necessary. While defendants identify certain witnesses they would like to call at an evidentiary hearing, Mot. at 2, they fail to indicate why affidavits from those witnesses were

---

[1] It is not entirely clear whether plaintiff uses the word "uttered" here as his handwriting is difficult to read.

not presented with the briefs concerning their motion to dismiss. Further, defendants fail to point to anything suggesting that evidence which could only be produced via an evidentiary hearing at this point, would add anything material to the record already before the court.

Accordingly, defendants' request that the court hold an evidentiary hearing will be denied and the court will recommend that defendants' motion to dismiss be denied with respect to "Count 4."

Defendants' filed objections to these findings and recommendations on October 3, 2011. Essentially, defendants argued that the court should have held the evidentiary hearing described above before ruling on their motion to dismiss. After reviewing defendants' objections, the court vacated its recommendation that defendants' April 22, 2010 motion to dismiss be denied with respect to plaintiff's First Amendment claims against defendants Craddock and Probst arising out of events occurring June 7, 2007. The court also granted defendants' request that the court hold an evidentiary hearing as to whether plaintiff participated in an interview occurring on or about August 12, 2007 with Sgt. Harrod concerning first level review of grievance No. HDSP 07-2687.

The evidentiary hearing was held on December 13, 2011. Now retired Sgt. Harrod (a defendant in this action who is not a party to the pending motion to dismiss) and plaintiff testified. The court also received plaintiff's exhibit 1 which is a letter plaintiff asserts he sent to the Director of the California Department of Corrections and Rehabilitation (CDCR) on August 7, 2007.

As indicated in the September 12, 2011 findings and recommendations, a motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

4

The exhaustion requirement is rooted in the Prison Litigation Reform Act, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). CDCR regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation generally will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

Administrative remedies must be "properly" exhausted which means use of all steps put forward by the agency. Woodford v. Ngo, 548 U.S. 81, 90 (2006). Also, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. As indicated above, a procedural rule applicable to the CDCR prisoner grievance process is that the prisoner who filed the grievance must participate in interviews conducted by staff reviewing the grievance and otherwise cooperate with the reviewer. Cal Code. Regs. tit 15, § 3084.4(d) (2007). Failure to do so results in cancellation of the grievance. Id. Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt, 315 F.3d at 1119.

After considering the testimony of both Sgt. Harrod and plaintiff, and all of the other relevant evidence before the court, the court finds that defendants have met their burden of establishing that plaintiff's grievance concerning his claims of retaliation against defendants Craddock and Probst was cancelled at the first level of review because plaintiff failed to participate in the first level of review interview with Sgt. Harrod. That being the case,

defendants have also met their burden of proving plaintiff failed to exhaust administrative remedies with respect to his claims of retaliation against Craddock and Probst.

Essentially, Harrod testified consistently with the information provided in his affidavit. He also indicated, among other things: (1) he terminated the August 12, 2007 interview with plaintiff because he was concerned that the conversation might escalate into a physical confrontation or, at a minimum, the need for correctional officers to use physical force; 2) he warned plaintiff twice that he would cancel the interview if plaintiff failed to discuss his allegations against Craddock and Probst; 3) he had no personal relationship with either Officer Craddock or Probst; and 4) plaintiff indicated during the interview that he would sue Harrod.

The court finds the testimony of Sgt. Harrod to be believable. The court believes Harrod was assigned to interview plaintiff regarding his allegations against Craddock and Probst pursuant to his normal duties as a correctional sergeant. No evidence was presented that Harrod had any meaningful bias against plaintiff, any meaningful relationship with Craddock or Probst or any other significant reason to do anything other than carry out his assigned duty to interview plaintiff pursuant to first level review. The court also finds it believable that Harrod terminated the interview with plaintiff because plaintiff was not engaging Harrod concerning the grievance against Craddock and Probst and because of the risk that matters would escalate beyond mere discussion. Finally, it is worth noting that Harrod testified that plaintiff threatened to sue Harrod during the interview, and that did in fact happen.[2] While Harrod had little verbatim recollection of the precise words used by plaintiff at the August 12, 2007 interview, the court does not give great weight to this fact since the interview occurred four years ago.

Plaintiff testified that the August 12, 2007 interview was a sham in that Harrod informed plaintiff early in the interview that he and other correctional staff had already decided to cancel plaintiff's grievance because plaintiff had circumvented the normal appeals process and

---

[2] This was also recorded in the memorandum signed by M. Wright and apparently drafted by Harrod within a short time after the aborted interview. See, Exhibit L.

only obtained review at the first formal level after complaining to High Desert's Department of Internal Affairs. According to plaintiff, Harrod and the other officers did not want inmate grievances to advance to the first formal level of review outside of the normal grievance process or at least not pursuant to a complaint submitted to internal affairs. The court does not find these assertions credible. First, it does not makes sense that if Harrod were participating in a conspiracy to wrongfully terminate plaintiff's grievance, he would announce that fact to plaintiff. Second, as suggested above, there is little motive for Harrod to participate in such a conspiracy. Plaintiff suggests Harrod and others might not have been happy with the fact that plaintiff's grievance came to them via internal affairs, but there is no evidence before the court suggesting this was enough to lead correctional officers to wrongfully terminate plaintiff's grievance rather than simply executing the first level interview. Harrod testified that sometimes he would conduct as many as two or three grievance interviews a day. There is nothing before the court indicating that plaintiff's grievance was a clear target for wrongful termination rather than the routine processing which the court assumes accompanies most inmate grievances.

Plaintiff also testified that he had already been interviewed regarding his allegations against Craddock and Probst, and that interview took place four days before his interview with Harrod. Whether or not this is true, it is clear to the court that when plaintiff went to the meeting with Harrod on August 12, 2007, he was of the belief that such a meeting was not warranted because he had already been through the process four days prior. The court concludes that plaintiff's belief in this regard may well explain plaintiff's attitude in failing to answer Harrod's questions.[3] The court accepts Harrod's testimony that he warned plaintiff that he had to respond to the questions, and that he explained that he would cancel the interview if plaintiff

/////

---

[3] To be clear, even if plaintiff had been interviewed already, there is nothing to suggest that plaintiff was not required to participate in the August 12, 2007 interview with Harrod. The court concludes that plaintiff was required to participate in the August 12, 2007 interview, and he chose not to.

1 persisted in being loud and argumentative.  The court also accepts Harrod's testimony that
2 plaintiff failed to conform his behavior and demeanor as requested.

3        For all of the foregoing reasons, the court will recommend that plaintiff's claims
4 that defendants Craddock and Probst retaliated against plaintiff in violation of his First
5 Amendment rights by taking his property on June 7, 2007 be dismissed for failure to exhaust
6 administrative remedies.

7        In accordance with the above, IT IS HEREBY RECOMMENDED that:

8        1. Defendants' April 22, 2010 motion to dismiss be granted with respect to
9 plaintiff's First Amendment claims against defendants Craddock and Probst concerning events
10 occurring June 7, 2007; and

11        2. Defendant Craddock be dismissed from this action.[4]

12        These findings and recommendations are submitted to the United States District
13 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-
14 one days after being served with these findings and recommendations, any party may file written
15 objections with the court and serve a copy on all parties.  Such a document should be captioned
16 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
17 shall be served and filed within fourteen days after service of the objections.  The parties are
18 advised that failure to file objections within the specified time may waive the right to appeal the
19 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

 Dated: December 15, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

[1] chat1028.57

---

[4] There are other claims still pending against defendant Probst.

8