UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CHATMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TOM FELKER, et al.,<br><br>　　　　Defendants. | No. 2:09-cv-1028 JAM CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendants Felker, Harper, Harrod, Keating, McDonald, Perez, Probst, Smith, Uribe and Williams ("defendants") are either current or former employees at High Desert State Prison (High Desert). Defendants have filed a motion for summary judgment (ECF No. 120).[1]

/////

/////

/////

---

[1] With their reply brief, defendants make several objections to evidence submitted by plaintiff. The court has reviewed all of the objections. With the exception of defendants' objection to paragraph 58 of plaintiff's declaration offered in support of his opposition, the objections will not be specifically addressed. This is because it is clear that none of the other evidence to which defendants object is used by the court in its analysis.

1

I. <u>Remaining Claims</u>

On September 17, 2009, a magistrate judge previously assigned to this case screened plaintiff's complaint pursuant to 28 U.S.C. 1515A. The magistrate judge found that plaintiff could proceed on the following claims:

1. Retaliation by defendant Williams for plaintiff's exercise of a First Amendment right as described in "Count One" of plaintiff's complaint.

2. Denial of medical care in violation of the Eighth Amendment and retaliation for plaintiff's exercise of a First Amendment right by defendants Patton and Uribe as described in "Count Two" of plaintiff's complaint.

3. Use of excessive force in violation of the Eighth Amendment and retaliation for plaintiff's exercise of a First Amendment right by defendant Smith as described in "Count Three" of plaintiff's complaint.

4. Retaliation by defendants Craddock and Probst on June 7, 2007 for plaintiff's exercise of a First Amendment right as described in "Count Four" of plaintiff's complaint.

5. Retaliation by defendant Probst on July 5, 2007 for plaintiff's exercise of a First Amendment right as described in "Count Four" of plaintiff's complaint.

6. Retaliation for exercise of a First Amendment right by defendants Felker, McDonald and Perez as described in "Count Five" of plaintiff's complaint.

7. Retaliation by defendant Harrod for plaintiff's exercise of a First Amendment right as described in "Count Six" of plaintiff's complaint.

8. Retaliation by defendant Simpson for plaintiff's exercise of a First Amendment right as described in "Count Seven" of plaintiff's complaint.

9. Denial of plaintiff's right to free speech in violation of the First Amendment by defendant Keating as described in "Count Eight" of plaintiff's complaint.

10. Retaliation by defendant Harper for plaintiff's exercise of a First Amendment right as described in "Count Nine" of plaintiff's complaint.

/////
/////

1    11. Retaliation by defendants Shaver, Griffith, Peddicord, Felker, McDonald and Perez
2 for plaintiff's exercise of a First Amendment right as described in "Count Ten" of plaintiff's
3 complaint.
4    12. Intentional infliction of emotional distress in violation of California law by
5 defendants Williams, Patton, Uribe, Smith, Harrod, Keating, Craddock, Probst, Felker,
6 McDonald, Perez, Harper, Shaver, Griffith and Peddicord as described in "Count Eleven" of
7 plaintiff's complaint.
8    Plaintiff's claim against defendant Simpson was dismissed on June 4, 2010 pursuant to a
9 motion brought by plaintiff (ECF No. 27).
10   The following claims were dismissed on March 28, 2012 pursuant to a motion to dismiss
11 filed by defendants (ECF No. 29):
12   1. Retaliation by defendant Uribe for plaintiff's exercise of a First Amendment right as
13 described in "Count Two" of plaintiff's complaint.
14   2. Retaliation by defendants Shaver, Griffith and Peddicord for plaintiff's exercise of a
15 First Amendment right as described in "Count Ten" of plaintiff's complaint.
16   3. Retaliation by defendants Craddock and Probst on June 7, 2007 for plaintiff's exercise
17 of a First Amendment right as described in "Count Four" of plaintiff's complaint.
18   4. "Count Eleven."
19   Plaintiff's retaliation claim against defendant Patton described in "Count Two" of
20 plaintiff's complaint was dismissed on June 15, 2012 pursuant to a motion to dismiss brought by
21 defendant Patton (ECF No. 65).
22    Defendant Patton is not a party to the motion for summary judgment presently before the
23 court.  Patton filed his own motion for summary judgment (ECF No. 118) which the court has
24 already addressed (ECF No. 143).
25   Accordingly, the claims which remain, except for the claim remaining against defendant
26 Patton, are as follows:
27   1. Retaliation by defendant Williams for plaintiff's exercise of a First Amendment right
28 as described in "Count One" of plaintiff's complaint.

3

2. Denial of medical care in violation of the Eighth Amendment against defendant Uribe as described in "Count Two" of plaintiff's complaint.

3. Use of excessive force in violation of the Eighth Amendment and retaliation for plaintiff's exercise of a First Amendment right by defendant Smith as described in "Count Three" of plaintiff's complaint.

4. Retaliation by defendant Probst on July 5, 2007 for plaintiff's exercise of a First Amendment right as described in "Count Four" of plaintiff's complaint.

5. Retaliation by defendants Felker, McDonald and Perez for plaintiff's exercise of a First Amendment right as described in "Count Five" of plaintiff's complaint.

6. Retaliation by defendant Harrod for plaintiff's exercise of a First Amendment right as described in "Count Six" of plaintiff's complaint.

7. Denial of the right to free speech in violation of the First Amendment by defendant Keating as described in "Count Eight" of plaintiff's complaint.

8. Retaliation by defendant Harper for plaintiff's exercise of a First Amendment right as described in "Count Nine" of plaintiff's complaint.

9. Retaliation by defendants Felker, McDonald and Perez for plaintiff's exercise of a First Amendment right as described in "Count Ten" of plaintiff's complaint.

II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See

1  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an
2  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
3  Id.

4      If the moving party meets its initial responsibility, the burden then shifts to the opposing
5  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita
6  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
7  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
8  of their pleadings but is required to tender evidence of specific facts in the form of affidavits,
9  and/or admissible discovery material, in support of its contention that the dispute exists or show
10  that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.
11  R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the
12  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
13  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
14  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
15  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
16  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

17      In the endeavor to establish the existence of a factual dispute, the opposing party need not
18  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
19  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
20  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
21  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
22  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
23  amendments).

24      In resolving the summary judgment motion, the evidence of the opposing party is to be
25  believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the
26  facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475
27  U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
28  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

1  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
2  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than
3  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record
4  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
5  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
6  III.  "Count One"—Defendant Williams
7         On March 23, 2007, plaintiff was found guilty of "unlawful influence" following prison
8  disciplinary proceedings conducted at High Desert.  As a result of the finding, 30 days good
9  conduct sentence credit was revoked and other institutional penalties were imposed.  The finding
10 was based upon the fact that plaintiff had given defendant Williams a letter suggesting they enter
11 into a business venture together concerning "hip-hop" themed games including video games.
12 Decl. of M. Williams, Ex. A.  Plaintiff does not dispute that he did in fact give the letter to
13 Williams, although he asserts he did so mistakenly.  The contents of the letter are not disputed.
14        In "Count One" of his complaint, which is signed under the penalty of perjury, plaintiff
15 alleges that defendant Williams's report concerning the letter was a "fabrication" in retaliation for
16 plaintiff's "constant litigations and / or complaints" against defendant Williams.
17        Prison officials generally cannot retaliate against inmates for exercising First Amendment
18 rights.  Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  Because a prisoner's First
19 Amendment rights are necessarily curtailed, however, a successful retaliation claim requires a
20 finding that "the prison authorities' retaliatory action did not advance legitimate goals . . ."  Id. at
21 532.  The plaintiff bears the burden of pleading and proving the absence of legitimate correctional
22 goals for the conduct of which he complains.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).
23        Defendants are correct that plaintiff's claim is barred by Edwards v. Balisok, 520 U.S. 641
24 (1997).  There, the Supreme Court held that any claim that implies the invalidity of a prison
25 disciplinary finding which resulted in the revocation of good conduct sentence credit cannot be
26 pursued in a § 1983 action until the disciplinary finding is overturned through a habeas corpus
27 proceeding or some other appropriate action.  Id. at 647-48.  For plaintiff to prevail on his First
28 Amendment claim against defendant Williams, a trier of fact would have to find that there was no

1 legitimate correctional goal advanced when Williams submitted her report. Such a finding would
2 imply the invalidity of the disciplinary finding that plaintiff had engaged in "unlawful influence."
3       For all of these reasons, defendant Williams should be granted summary judgment with
4 respect to plaintiff's remaining claim against her.

5 IV. "Count Two"—Defendant Uribe

6       In "Count Two" of his complaint, plaintiff alleges that on or about March 8, 2007, while
7 housed in "administrative segregation," he summoned Correctional Officer Nichols because he
8 had been suffering "excruciating pain to his left foot and left shoulder." Because of the pain,
9 plaintiff could not move from his bed. Complt., ¶ 33.

10       In response, Nichols summoned "facility sergeant" Patton[2] and defendant Uribe. Id., ¶¶ 7
11 & 34. When Patton and Uribe arrived at plaintiff's cell, plaintiff told them he could not move and
12 that his left foot and shoulder hurt very badly (sic). Id., ¶ 35. Defendant Uribe and Patton asked
13 plaintiff to come to the door of his cell. Id., ¶ 36. In response, plaintiff indicated he could not
14 leave his bed. Id., ¶ 37. Defendant Uribe and Patton informed plaintiff that if he did not come to
15 the door, they would not help plaintiff and would interpret plaintiff's actions as a refusal of
16 medical care. Id., ¶ 36. Because plaintiff did not come to the door of his cell, Uribe and Patton
17 left. Id., ¶ 37.

18       Plaintiff spent that evening in "excruciating pain" and could not move. Id., ¶ 38. The
19 following morning, plaintiff was discovered in poor physical condition and taken to the infirmary
20 by correctional officers in a wheelchair. Id., ¶ 39. Plaintiff was admitted to the infirmary and
21 diagnosed with having gout. Id. ¶¶ 39-40.

22       The Eighth Amendment's prohibition of cruel and unusual punishment extends to medical
23 care of prison inmates. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In order to state a section
24 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a prison
25 inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to
26 serious medical needs." Id. at 106. The nature of a defendant's responses must be such that the

---

[2] As indicated above, "facility sergeant" Patton is defendant in this action, but not a party to the motion for summary judgment addressed herein.

defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care. Id. at 1059-60. However, a showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).

Defendants argue defendant Uribe should be granted summary judgment because any delay in medical care attributed to him did not cause plaintiff any actionable harm. But plaintiff essentially alleges that due to the actions of defendant Uribe he was left to suffer in "excruciating" pain on the evening of March 8, 2007. Defendants seem to suggest that plaintiff needed to suffer some permanent injury as a result of defendant Uribe's actions, rather than being subjected to severe pain, for liability under the Eighth Amendment to be imposed. This is too narrow a reading of the Eighth Amendment and does not follow from the case law identified above or subsequent precedent in this circuit. It is true, as defendants suggest, that there is nothing showing that plaintiff's condition worsened as a result of defendant Uribe's alleged failure to summon medical care. However, that is not to say plaintiff's "excruciating" pain could not have been treated sooner by medical professionals had plaintiff been given access to them by Uribe.

Defendants point to evidence indicating that plaintiff's condition was not serious in the late morning hours of March 9, 2007. While this evidence suggests plaintiff's pain on the evening of March 8, 2007 and in the early morning hours of March 9, 2007 was not as severe as plaintiff alleges, the evidence does not serve to negate the existence of at least a genuine issue of material fact that the pain was as severe as plaintiff asserts.

For these reasons, defendants' motion for summary judgment with respect to plaintiff's remaining claim against defendant Uribe should be denied.

/////

V. "Count Three"—Defendant Smith

Plaintiff alleges that on May 20, 2007, he received a food tray through the food port in his cell from Correctional Officer K. Miller. When Miller returned to plaintiff's cell to retrieve the food tray, plaintiff complained that the food on the tray was in "disarray" including the fact that the juice carton provided was on top of the greens provided. Complt., ¶¶ 43-44. Plaintiff asked Miller to speak with the "housing sergeant" about getting another tray. Id., ¶ 45.

Defendant Smith then approached plaintiff's cell and, with "brute force," grabbed the food tray out of plaintiff's food port. As defendant Smith grabbed the tray, he said he was "sick and tired of [plaintiff's] bitch ass whining all the time." When defendant Smith grabbed the tray, plaintiff's hand was attached to the other end of it, and Smith's grabbing of the tray caused plaintiff left thumb to hit the food port. Plaintiff experienced "excruciating pain" to his left thumb and still suffers from numbness. Id., ¶¶ 45-48 & 50.

Plaintiff told Smith that he would be filing a grievance against him. In response, Smith promised physical harm against plaintiff the next time Smith escorted plaintiff to the showers. Plaintiff did eventually file a grievance against Smith. Id., ¶¶ 48-50. Plaintiff does not allege that Smith ever took any action against plaintiff as a result of the grievance.

The claims which remain against defendant Smith are use of excessive force in violation of the Eighth Amendment and retaliation for plaintiff's exercise of a First Amendment right by defendant Smith.

Defendants assert defendant Smith is immune from plaintiff's claims under the "qualified immunity" doctrine. The argument is premised upon defendant Smith's declaration in which he asserts that on May 20, 2007 he retrieved plaintiff's dinner tray from plaintiff's cell without incident. Defendants also point to evidence indicating there are no medical records from May 20, 2007 indicating plaintiff was injured that day.

However, the court must, generally speaking, assume that the facts most favorable to plaintiff are the ones that are true for purposes of a motion for summary judgment. That being the case, defendants' reliance upon defendant Smith's assertion that he was not involved in any conflict with plaintiff on May 20, 2007 in support of their motion for summary judgment is

improper. While the fact that there are no medical records from May 20, 2007 indicating plaintiff was injured that day does tend to show that plaintiff was not subjected to excessive force, it is not enough to render plaintiff's testimony as to what occurred on May 20, 2007 unbelievable by a rational juror.

For all of these reasons, defendants' motion for summary judgment with respect to plaintiff's remaining claims against defendant Smith should be denied.

VI. <u>"Count Four"—Defendant Probst</u>

The allegations identified by plaintiff in his complaint which support plaintiff's remaining First Amendment retaliation claim against defendant Probst are as follows:

> 62. On or about July 5, 2007, while plaintiff was being escorted in waistchains by defendant Probst from the facility "C" law library, he was confronted by him in regards to a grievance filed against him for property theft and confiscation of plaintiff's medications.
>
> 63. When plaintiff ignored defendant Probst, he smacked the legal documents he was carrying out of his hands.
>
> 64. When plaintiff confronted Defendant Probst about the incident, he stated he didn't have anything better to do besides provoke plaintiff into getting his ass kicked by an army of CO's (correctional officers).
>
> 65. As plaintiff got on his knees to retrieve his documents, off the ground, Defendant Probst kicked dirt on some of them, while threatening to do physical harm to him.
>
> 66. When plaintiff got up from the ground, Defendant Probst took two documents out of his hand, folded it, then placed it in his right side pants pocket.
>
> 67. For months after the above incident, Defendant Probst continued to harass and threaten plaintiff for filing grievances and complaints against him, while bragging how he destroyed plaintiff's court documents on a previous occasion.

Prison officials generally cannot retaliate against inmates for exercising First Amendment rights. <u>Rizzo</u>, 778 F.2d at 531. Retaliation in this context is adverse action taken against an inmate because of conduct by the inmate which is protected by the First Amendment. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005). A chilling effect on the exercise of a plaintiff's First Amendment rights must result from the adverse action. <u>Id</u>. at 567-68. There is a chilling effect if the adverse action would chill a person of "ordinary firmness" from exercising First

1   Amendment rights. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). If a plaintiff suffers
2   more than minimal harm as a result of the adverse action, the "chilling effect" requirement is
3   satisfied. Id.

4   Essentially, defendants argue that defendant Probst should be granted summary judgment
5   because Probst's action would not chill a person of "ordinary firmness" from exercising First
6   Amendment rights. Construing the facts alleged in the light most favorable to plaintiff, defendant
7   Probst, among other things, threatened plaintiff with physical harm because plaintiff filed
8   grievances against him. The court finds such a threat would chill a person of "ordinary firmness"
9   from further exercise of rights protected by the First Amendment. Accordingly, defendants'
10  argument that defendant Probst should be granted summary judgment should be rejected.

11  VII. "Count Five"—Defendants Felker, McDonald And Perez

12  In "Count Five" plaintiff alleges "defendants Felker, McDonald and Perez violated
13  plaintiff's Constitutional rights under the First and Eighth Amendments by condoning
14  confiscation of his property, court documents and prescribed medications." Essentially, plaintiff
15  asserts he told Warden Felker, Chief Deputy Warden McDonald and Associate Warden Perez
16  about various wrongs plaintiff believed he had suffered at the hands of subordinate staff members
17  and they responded, if at all, by telling plaintiff that he should utilize the inmate grievance
18  process rather than complain to them.

19  Defendants Felker, McDonald and Perez are entitled to summary judgment with respect to
20  this claim. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link
21  or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423
22  U.S. 362 (1976). Plaintiff fails to point to anything suggesting Felker, McDonald or Perez were
23  affirmatively involved in any alleged violation of plaintiff's Constitutional rights. Defendants
24  Felker, McDonald and Perez cannot be liable simply because they hold supervisory positions over
25  persons who violated plaintiff's rights. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

26  VIII. "Count Six"—Defendant Harrod

27  Plaintiff alleges that on August 12, 2007, he was interviewed by defendant Harrod with
28  respect to a grievance filed by plaintiff. Complt., ¶ ¶ 76-50. After the hearing, defendant Harrod

dismissed plaintiff's grievance because, during the interview, plaintiff was argumentative and uncooperative. Id., ¶ 81. During the interview, defendant Harrod told plaintiff the grievance would be dismissed "in retaliation for plaintiff having Sacramento prison officials interfere with the appeals process." Id., ¶ 80. In "Count Six" of his complaint, plaintiff alleges defendant Harrod's actions amount to retaliation for exercise of First Amendment rights.

Defendants argue Harrod is entitled to summary judgment with respect to this claim pursuant to the "law of the case" doctrine because this court already found, during proceedings on a motion to dismiss claims against defendants Craddock and Probst for failure to exhaust administrative remedies, that defendant Harrod was truthful when he testified that plaintiff was argumentative and uncooperative during his interview with defendant Harrod, and that plaintiff's being uncooperative and argumentative was a legitimate basis for dismissal of plaintiff's appeal. See ECF Nos. 59 & 76.

The Ninth Circuit has bestowed upon district courts the ability to decide disputed issues of fact when adjudicating a motion to dismiss for failure to exhaust administrative remedies. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). However, as indicated above, it is a fundamental principle of federal civil procedure, no doubt from a plaintiff's Constitutional right to a jury trial in a § 1983 action, see City of Monterey v. Del Monte Dunes, 526 U.S. 687, 709 (1999) that the court cannot decide genuine issues of material fact when adjudicating a motion for summary judgment. Defendants fail to point to any case law indicating this court may use the "law of the case" doctrine to import a ruling as to a disputed issue of fact from proceedings on a motion to dismiss for failure to exhaust administrative remedies to resolve a genuine issue of material fact with respect to a motion for summary judgment.

In any case, the court finds that the policies of finality and efficiency promoted by the "law of the case" doctrine, see Gonzalez v. Arizona, 624 F.3d 1162, 1186 (9th Cir. 2010), must give way here to the more-fundamental principle that plaintiffs are entitled to have a jury resolve genuine issues of material fact concerning the merits of their claims. Accordingly, defendants' motion for summary judgment regarding plaintiff's remaining First Amendment claim against defendant Harrod should be denied.

1  IX. "Count Eight"—Defendant Keating

2  Defendants seek summary judgment on behalf of defendant Keating. However, defendants' motion is not directed at what the court construes as plaintiff's only remaining claim against defendant Keating: that Keating prevented plaintiff from communicating with attorney Jamie Fellner of "Human Rights Watch" in violation of the First Amendment by confiscating letters intended for her.[3] Accordingly, defendants' motion for summary judgment should be denied as it pertains to defendant Keating.

X. "Count Nine"—Defendant Harper

In "Count Nine" of his complaint, plaintiff alleges defendant Harper deprived plaintiff of personal property including stationary, cosmetics, books, medications, mail, appliances and legal materials for about a month, in retaliation for plaintiff staging a hunger strike. Defendants assert Harper is immune from plaintiff's claim under the "qualified immunity" doctrine. The argument lacks merit, however, because in their argument defendants ignore key factual allegations by plaintiff that the above described property was taken from him and that Harper essentially told plaintiff he would be retaliated against if he did not end his strike. Complt. ¶¶ 116-123. Instead, defendants' argument is premised upon defendant Harper's assertions in his declaration that only trash and "white out" were taken from plaintiff's cell pursuant to a search and inventory of plaintiff's cell ordered by Harper by virtue of plaintiff's hunger strike. Because the court must accept the facts most favorable to plaintiff when considering defendants' motion for summary judgment, defendants have not presented a valid basis for defendant Harper being granted summary judgment.[4]

---

[3] In the September 17, 2009 screening order, Magistrate Judge Mueller found service of plaintiff's complaint appropriate for defendant Keating "on claims as alleged." In "Count Eight" of his complaint, the only "Count" where Keating is named as a defendant, plaintiff alleges "Defendant . . . Keating violated plaintiff's Constitutional rights under the First Amendment through censorship and confiscation of his confidential mail." In his allegations supporting his claim, plaintiff claims three letters intended for Fellner were intercepted and confiscated by defendant Keating. Complt., ¶¶ 108-111.

[4] Defendants object to the following which appears in paragraph 58 of plaintiff's declaration in support of his opposition: "Defendant Harper found out that I was on hunger strike, which prompted him to order C/O Rodriguez to confiscate all my property." Defendants' objection is

13

XI. "Count Ten"—Defendants Felker, McDonald and Perez

In "Count Ten," plaintiff asserts defendants Shaver, Griffith, Peddicord, Felker, McDonald and Perez retaliated against plaintiff by placing him in segregated housing because he refused to be celled with an inmate plaintiff believed to be hostile. On March 28, 2012, defendants Shaver, Griffith and Peddicord were dismissed pursuant to a motion to dismiss brought on their behalf (ECF No. 29) because plaintiff failed to exhaust administrative remedies with respect to his claims against them. It is not clear why the motion was not brought on behalf of Felker, McDonald and Perez, but after reviewing the briefing with respect to the motion to dismiss, and the court's findings and recommendations issued pursuant to the motion, it appears failure to include Felker, McDonald and Perez was mere oversight or based on a misinterpretation of the September 17, 2009 screening order as to which claims remained against Felker, McDonald and Perez.[5]

Because the court's finding that plaintiff failed to exhaust administrative remedies with respect to his retaliation claim against defendants Shaver, Griffith and Peddicord detailed in "Count Ten" of his complaint appears to apply to defendants Felker, McDonald and Perez as well (see September 12, 2011 Findings and Recommendations), the court will recommend that plaintiff's remaining retaliation claims in "Count Ten" against Felker, McDonald and Perez be dismissed for failure to exhaust administrative remedies.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant Felker, Harper, Harrod, Keating, McDonald, Perez, Probst, Smith, Uribe and Williams's motion for summary judgment (ECF No. 120) be granted in part and denied in part as follows:

/////

---

sustained in that the court does not consider the statement to be evidence as to why Correctional Officer Rodriguez confiscated the property plaintiff alleges. However, in his declaration, Harper admits he ordered Correctional Officer Rodriguez to search and inventory plaintiff's cell because plaintiff was on a hunger strike

[5] A degree of misunderstanding of the screening order is understandable considering the fact that the allegations in plaintiff's complaint are mostly not clear.

  A. Granted with respect to plaintiff's remaining First Amendment claim against defendant Williams resulting in defendant Williams being dismissed from this action.

  B. Denied with respect to plaintiff's remaining Eighth Amendment denial of medical care claim against defendant Uribe described in "Count Two" of plaintiff's complaint.

  C. Denied with respect to plaintiff's remaining First Amendment retaliation and Eighth Amendment excessive force claims against defendant Smith described in "Count Three" of plaintiff's complaint.

  D. Denied with respect to plaintiff's remaining First Amendment retaliation claim against defendant Probst concerning events occurring July 5, 2007 identified in "Count Four" of plaintiff's complaint.

  E. Granted with respect to plaintiff's remaining First Amendment retaliation claims in "Count Five" against defendants Felker, McDonald and Perez.

  F. Denied with respect to plaintiff's claim that defendant Harrod dismissed a grievance filed by plaintiff in retaliation for plaintiff's exercise of his First Amendment rights as identified in "Count Six" of plaintiff's complaint.

  G. Denied with respect to plaintiff's remaining First Amendment claim against defendant Keating based upon Keating denying plaintiff the ability to communicate with attorney Fellner identified in "Count Eight" of plaintiff's complaint.

  H. Denied with respect to plaintiff's claim that defendant Harper retaliated against plaintiff in violation of the First Amendment by confiscating certain personal property items because plaintiff staged a hunger strike as identified in "Count Nine" of plaintiff's complaint.

 2 Plaintiff's remaining First Amendment retaliation claims against defendants Felker, McDonald and Perez described in "Count Ten" of plaintiff's complaint be dismissed for failure to

/////

1 | exhaust administrative remedies resulting in Felker, McDonald and Perez being dismissed from
2 | this action.

3 |       These findings and recommendations are submitted to the United States District Judge
4 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
5 | after being served with these findings and recommendations, any party may file written
6 | objections with the court and serve a copy on all parties.  Such a document should be captioned
7 | "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
8 | objections shall be served and filed within fourteen days after service of the objections.  The
9 | parties are advised that failure to file objections within the specified time may waive the right to
10 | appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11 | Dated:  February 25, 2014

12 |                         CAROLYN K. DELANEY
13 |                         UNITED STATES MAGISTRATE JUDGE

17 | [1] chat1028.57(2)